```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
PHILIPPE NYC I LLC and
PHILIPPE IP LLC,

                    Plaintiffs,

          - against -

PHILIPPE WEST COAST, LLC, IMANI
RESTAURANT GROUP, INC., IMANI HALLEY
and YOLANDA HALLEY,

                    Defendants.
---------------------------------------X
```

MEMORANDUM AND ORDER

14 Civ. 9858 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


In this trademark case, plaintiffs, the owners of a New York City restaurant, complain that defendants' restaurant in Beverly Hills, California, infringes upon their trademark, trade dress, and other intellectual property. Defendants move pursuant to Rules 12(b)(2), (3), and (5) to dismiss all claims, arguing defective service of process, lack of personal jurisdiction, and improper venue. For the reasons that follow, the motion is denied.

### I. BACKGROUND[1]

Philippe by Philippe Chow ("Philippe Restaurant") is a New York City restaurant that "offers haute Chinese cuisine in a refined atmosphere." Compl. ¶ 1. Upon its opening in 2005, Philippe Restaurant was owned and operated by Dave 60 NYC, Inc. ("Dave 60"), a New York corporation formed by Chef Philippe Chow and several investors. Id. ¶¶ 6, 20. Around January of 2014, plaintiff Philippe NYC I LLC ("Philippe NYC"), a New York limited liability company, was formed to be the new owner and operator of Philippe Restaurant. Id. ¶ 5. Dave 60 owns a 67% interest in Philippe NYC. The remaining 33% is owned by Philippe Equities LLC, a New York limited liability company and affiliate of Merchants Hospitality Inc. ("MHI"), a restaurant management company that assumed management responsibility for Philippe Restaurant in October of 2013. Id. ¶¶ 6, 43.

In 2009, the then-four shareholders of Dave 60 and defendant Imani "Manny" Halley, a California citizen, opened a Philippe Restaurant located in West Hollywood, CA ("Philippe West Hollywood"). Id. ¶ 31. Together, they formed defendant Philippe West Coast, LLC ("Philippe West LLC") a California company, to own and operate Philippe West Hollywood. Id. ¶¶ 8,

---

[1]     This factual background is drawn from plaintiffs' complaint and the exhibits attached thereto as well as plaintiffs' papers filed in opposition to defendants' motion to dismiss. In particular, we refer to the Declaration of Abraham Merchant in Opposition to Defendants' Motion to Dismiss ("Merchant Decl."), ECF No. 26, and the exhibits attached thereto. For the purposes of evaluating this motion, all unrebutted factual claims are presumed true.

31.     However, Philippe West Hollywood did not succeed financially.  Id. ¶ 33.  In April of 2010, the other owners of Philippe West LLC sold their entire member interests to Mr. Halley.[2]  Id. ¶ 34.  Thus, Mr. Halley came to own and operate the Philippe West Hollywood restaurant.

Contemporaneously with the sale of Philippe West LLC to Mr. Halley, Dave 60 and Philippe West LLC entered into a written licensing agreement.  Id. ¶ 35; see Merchant Decl. Ex. A (the "West Hollywood Licensing Agreement").  The West Hollywood Licensing Agreement granted Philippe West LLC license to operate Philippe West Hollywood, using the Philippe Restaurant brand, trademarks, recipes, menu, trade dress, and business practices.  Compl. ¶ 35.

The West Hollywood Licensing Agreement had three provisions that are relevant here.  First, the license it granted was location-specific, allowing Philippe West LLC to continue operating the restaurant in West Hollywood, CA, and nowhere else.  West Hollywood Licensing Agreement § 1.01.  If Philippe West LLC at any time ceased to operate Philippe West Hollywood, Dave 60 could terminate the agreement.  Id. § 13.02.

---

[2]     In actuality, Mr. Halley retained only a 98% ownership interest in Philippe West LLC, with 2% to be owned by Mr. Halley's associate, identified only as "DJ Mormile."  Compl. ¶ 34; Decl. of Richard Cohn in Further Opp'n To Defs.' Mot. to Dismiss Ex. A ("Sale Addendum"), ECF No. 37.  DJ Mormile's signature does not appear on the Sale Addendum, see Sale Addendum at 2, nor is he or she a party to this case.  For ease of reference, we refer to Philippe West LLC as being "purchased" by Mr. Halley in April 2010, and "owned" by him thereafter, despite the likely presence of another 2% owner.

Second, the West Hollywood Licensing Agreement contained a forum selection clause, which stated that any action brought by one party against the other

> in any court, whether federal or state, shall be brought in either the Supreme Court for the State of New York, County of New York or in the United States District Court for the Southern District of New York. Licensee hereby consents to personal jurisdiction and venue in the state and federal courts of New York.

Id. § 19.02. Third, the licensing agreement contained a survival clause, by which

> upon termination of this Agreement for any reason whatsoever . . . any provisions of this Agreement which, by their nature, extend beyond the expiration or termination of this Agreement, shall survive termination or expiration and be fully binding and enforceable as though such termination or expiration had not occurred.

Id. § 18.02.

Philippe West Hollywood continued to face financial issues, and Philippe West LLC, as licensee, closed the restaurant in the summer of 2012. Compl. ¶ 38. Subsequently, Mr. Halley sought permission from Dave 60 (then sole owner of Philippe Restaurant and its intellectual property) to open a new Philippe Restaurant location in Beverly Hills, CA. Id. ¶ 40. Specifically, Mr. Halley requested that the West Hollywood Licensing Agreement be transferred to the new restaurant he planned to open in Beverly Hills. Id. ¶ 41. However, he was informed that a new licensing agreement would be necessary, as the prior licensing agreement

had terminated by its terms upon the closing of Philippe West Hollywood.  Id.

By October 2013, MHI had assumed management responsibilities for Philippe Restaurant.  Id. ¶ 43.  Therefore, MHI's president, Abraham Merchant, negotiated with Mr. Halley with respect to the terms of operation of the prospective Beverly Hills location.  Id.  Merchant and Mr. Halley met in person on or around October 30, 2013, and reached an oral agreement on the terms of the proposed new licensing agreement. Id. ¶ 44.

On October 31, 2013, Merchant wrote to Mr. Halley by email asking him to confirm the terms they had agreed:

> Many [sic] it was good to see you last night. I am glad we were able to reach an amicable agreement. Let's get all the documentation done ASAP, however, in good faith we will proceed as if the agreement is in place.  For the sake of 100% clarity, we agreed to the following royalty and marketing terms, kindly confirm via return email that we have an understanding.

Merchant Decl. Ex. B, at 2.  Among the terms Merchant asked Halley to confirm was that "[a]ll other terms and conditions remain the same."  Id. at 3.  On November 1, Merchant wrote by email: "Manny. Please confirm that we are in agreement on the terms below. All I [] need per our conversation is in one word "YES."  Id. at 1.  Two minutes later, Halley responded, "Yes! Sorry forgot."  Id.

On or about November 1, 2013, the Philippe Restaurant at 8620 Wilshire Boulevard in Beverly Hills ("Philippe Beverly Hills") was opened.  Compl. ¶ 42.  Plaintiffs allege Mr. Halley and his wife, defendant Yolanda Halley, a California citizen, formed defendant Imani Restaurant Group, Inc. ("Imani Group"), a California corporation, to own and operate Philippe Beverly Hills.  Id. ¶¶ 10, 42.  Plaintiffs further claim that the Halleys together own and control Imani Group and operate Philippe Beverly Hills.  Id. ¶¶ 11–12.

The parties dispute what happened next.  Plaintiffs claim that, relying on Halley's repeated representations that he would sign a written licensing agreement, they allowed defendants to continue operating Philippe Beverly Hills.  Id. ¶ 45.  However, the Halleys refused to execute a written licensing agreement, despite being sent various drafts.  Id. ¶ 46.  Plaintiffs assert that in February of 2014, they became aware Philippe Beverly Hills was facing difficulties regarding food and service quality.  Id. ¶ 47.  Specifically, Mrs. Halley conducted a "series of urgent phone conversations" with Merchant, in which she asked for assistance in training the kitchen and service personnel at the restaurant.  Id.  MHI offered assistance but insisted upon payment for such services and the execution of a definitive licensing agreement.  Id.  MHI sent a proposed licensing agreement similar to the West Hollywood Licensing

agreement on February 18, 2014.  Id. ¶ 48.  When defendants failed to sign the proposed licensing agreement, plaintiffs sent a cease a desist notice to defendants, and later instigated the instant lawsuit.[3]  Id. ¶ 52.  Plaintiffs bring claims under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and various provisions of New York State law, seeking injunctive relief and damages. Defendants continue to operate Philippe Beverly Hills.  Id. ¶ 54.

## II.  DISCUSSION

Defendants move to dismiss the complaint pursuant to Rules 12(b)(2), (3), and (5) of the Federal Rules of Civil Procedure. They argue that service of process was defective, that the Court lacks personal jurisdiction, and that venue in this district is improper.

### A.  Service of Process

First, defendants move to dismiss the complaint under Rule 12(b)(5) for ineffective service of process.  Their principal argument is that service was improper because the affidavits of service sworn by plaintiffs' process server incorrectly describe Mr. Halley's physical appearance.  We conclude, however, that

---

[3]     Defendants, on the other hand, claim they had previously received permission to operate the restaurant, and that signing a new licensing agreement was never necessary.  See Aff. of Imani Halley for Defs.' Response ¶¶ 21, 34 ("Second Imani Aff."), ECF No. 36.  It is undisputed that the proposed licensing agreement for the Beverly Hills restaurant was never executed.

plaintiffs have sufficiently made out a prima facie case of proper service.

### 1. Governing Law

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). On a motion to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of establishing that service was sufficient." Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010) (citing Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)). Mere conclusory statements are not sufficient to overcome a defendant's sworn affidavit that service was improper. Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Instead, a plaintiff must establish a prima facie case of proper service through specific factual allegations and other supporting materials. Sikhs for Justice v. Nath, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012). In resolving the motion to dismiss, "a Court must look to matters outside the complaint to determine whether it has jurisdiction." Id. (quoting Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

Rule 4 of the Federal Rules of Civil Procedure sets out the requirements for service of process upon individuals and corporations.  An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Corporations within the United States must be served either:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and -- if the agent is one authorized by statute and the statute so requires -- by also mailing a copy of each to the defendant. . . .

Fed. R. Civ. P. 4(h)(1).  Rule 4 requires proof of service to be made by the server's affidavit.  Fed. R. Civ. P. 4(l)(1). However, "[f]ailure to prove service does not affect the

validity of service" and "[t]he court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3).

Finally, even if service of process is found to have been insufficient, dismissal is not mandatory but rather within the court's discretion. Rankel v. Town of Somers, 999 F. Supp. 2d 527, 536 (S.D.N.Y. 2014); see Darden, 191 F. Supp. 2d at 387-88 (concluding service of process was not effected but permitting the filing of an amended complaint and a second attempt at service).

### 2. Analysis of Service of Process

Although Mr. Halley denies being served in his first affidavit filed in connection with his motion, see Aff. of Imani Halley for Mot. to Dismiss ¶ 12 ("First Imani Aff."), this claim is notably absent from plaintiffs' two legal memoranda and Mr. Halley's subsequent affidavit, submitted in support of defendants' reply papers. Instead, defendants argue service was improper because the affidavits of service sworn by plaintiff's process server contain an incorrect physical description of Mr. Halley. Specifically, the affidavits of service describe Mr. Halley as a "black male, approximately 50 years of age, stand[ing] approximately 5 feet 9 inches tall, weigh[ing] approximately 170 pounds with black hair." ECF Nos. 3-7. Defendants urge that, instead, "Mr. Halley appears as a dark brown male, approximately 25 years of age, standing five feet 11

inches tall, and weighing approximately 125 pounds with black hair." Defs.' Mem. 2-3 (emphasis added). In support of the alleged discrepancy, defendants cite to almost identical sentences appearing in affidavits of Mr. and Mrs. Halley. <u>See</u> First Imani Aff. ¶ 11 ("My complexion is dark brown. Due to my physical appearance and disposition, I give off the impression that I am 25 years old, five feet 11 inches tall, and an approximate weight of 125 pounds."); Aff. of Yolanda Halley for Mot. to Dismiss ("Yolanda Aff.") ¶ 5 ("Imani Halley is my husband. Due to his physical appearance and disposition, he gives off the impression that he is 25 years old, five feet 11 inches tall, and an approximate weight of 125 pounds."). Curiously, or perhaps not, defendants never allege Mr. Halley's true age, height, or weight.[4] But based on the allegedly inaccurate physical description, defendants contend, Mr. Halley and the other three defendants (whom plaintiffs say they served through Mr. Halley) were improperly served.

In response, plaintiffs present evidence that each defendant was in fact served. They submit the declaration of the process server John Gonzalez, which recounts in detail his service of copies of the summons and complaint upon Mr. Halley

---

[4]     Plaintiffs submit a magazine article indicating that Mr. Halley's true age is approximately 40, <u>see</u> Merchant Decl. Ex. E, and assert that defendants' statements are intentionally misleading. Mr. Halley responds that "as is apparent from its plaining meaning, my affidavit never made any representation about my real age." Second Imani Aff. ¶ 92.

in person at his apartment in Los Angeles at approximately 11:53 a.m. on December 13, 2014.  See Decl. of John Gonzalez ¶¶ 2–8 ("Gonzales Decl."), ECF No. 27.  Plaintiffs additionally submit Gonzalez's contemporaneous work logs, which corroborate his account.[5]  See Gonzalez Decl. Ex. C.  Finally, plaintiffs' counsel sent photographs of Mr. Halley to Gonzalez, and Gonzalez confirmed that this was the man he had served.  See Gonzalez Decl. ¶ 9 & Ex. B.  Defendants make no serious efforts to dispute these allegations, which are more than sufficient to meet plaintiffs' burden.  See Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002) ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that Pacific was properly served with the complaint.").

Moreover, defendants offer no explanation of how Mr. Halley learned about this suit and hired a lawyer to oppose it.  Even more glaringly, in the course of moving to set aside his clients' previous defaults, defense counsel admitted to this Court that Mr. and Mrs. Halley received the summons and

---

[5]     Spaces in Gonzalez's work orders were filled to describe Mr. Halley as a black male of age "40+," height of "5-11," and weight of "150," with brown eyes and black hair.  Gonzalez Decl. Ex. C.

complaint in this case.[6]  Plaintiffs have clearly met their burden to show Mr. Halley was in fact served, and we do not credit Mr. Halley's conclusory statement to the contrary.

We also reject defendants' claim that the service was ineffective because the affidavits of service contain a physical description of Mr. Halley that is different from the "impression" he "gives off."  While a youthful appearance may be enviable, even presuming that the affidavits of service contain objectively inaccurate statements of his age, height, and weight -- an inference which Mr. and Mrs. Halley's hedged language does not fully permit -- defendants' argument is advanced without the benefit of any support for the notion that a technical defect in proof of service vitiates service of process.  The opposite is in fact true.  See Fed. R. Civ. P. 4(l)(3) ("Failure to prove service does not affect the validity of service."); Dow v. Jones, 232 F. Supp. 2d 491, 497 (D. Md. 2002) (defendant who claimed affidavit of service contains inaccurate physical description but had actual notice of action not entitled to quash service of process).

---

[6]    "[N]either Mr. Halley nor Mrs. Halley is an attorney, so neither immediately understood the legal ramifications of the Summons and Complaint. In fact, Mr. and Mrs. Halley are restaurant managers. Moreover, Mr. and Mrs. Halley did not believe that taking any action with regard to the Summons and Complaint was necessary because Mr. and Mrs. Halley had every intention of resolving the alleged issues asserted by Plaintiffs in their Complaint." Mem. of Law to Set Aside Entry of Default at 5, ECF No. 13.

Having concluded plaintiffs have made a prima facie case that Mr. Halley was properly served, it is clear they have made the same showing with respect to the remaining defendants. Service was proper on Mrs. Halley.   Like her husband, Mrs. Halley denies being served with the summons and complaint. Yolanda Aff. ¶ 9.   However, plaintiff's process server states that at the same time he personally served Mr. Halley, Mr. Halley accepted a copy of the summons and complaint on behalf of his wife.   Gonzalez Decl. ¶ 4.   It is undisputed that the Halleys live together, and that Mr. Halley is an adult.   See First Imani Aff. ¶¶ 3, 5.   Plaintiffs have therefore met the requirements of Rule 4(e)(2)(B).

Finally, service upon the two corporate defendants was proper.   Plaintiffs allege Imani Halley owns and controls both Philippe West LLC and Imani Group, and that he is the designated agent for service of process for both entities.   Pls.' Mem. 10. Defendants do not dispute that Mr. Halley serves in these roles. The sworn statement from plaintiffs' process server -- that he delivered to Mr. Halley, and Halley accepted, service on behalf of both entities, Gonzalez Decl. ¶ 3 -- is sufficient to make out a prima facie case of proper service.   See Fed. R. Civ. P. 4(h)(1)(B); Cal Civ. Proc. Code § 416.10; N.Y. C.P.L.R. § 311(a)(1).

## B.   Personal Jurisdiction

Second, defendants move to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction based solely on the same insufficient service of process argument rejected above. Defs.' Mem. 7.   Accordingly, the challenge to personal jurisdiction is likewise rejected.[7]

## C.   Venue

Third, defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), contending that venue is improper in this district.   While defendants acknowledge the forum selection clause in the West Hollywood Licensing Agreement, which selects this district as the venue for any action brought by the licensor, defendants argue that the forum selection clause is inapplicable and that venue does not lie in this district pursuant to 28 U.S.C. § 1391.[8]

---

[7]   We note additionally that plaintiffs allege two unrefuted theories of personal jurisdiction.   First, plaintiffs say personal jurisdiction lies under New York's long-arm statute, specifically N.Y. C.P.L.R §§ 302(a)(1) and (3), because defendants' allegedly tortious conduct damaged plaintiffs' intellectual property in New York.   See Compl. ¶ 14; Pls.' Mem. 15-17. Second, the contractually agreed forum selection clause, which we discuss in detail below, also contains a provision consenting to personal jurisdiction in this Court.   See Compl. ¶ 14; Pls.' Mem. 13-15. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).

[8]   Defendants do not analyze the issue of whether, upon a finding of improper venue, this Court should dismiss the action or transfer it pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).   Instead, they simply ask for dismissal of all claims.   We do not reach this issue because we conclude plaintiffs have met their burden to demonstrate that the parties are bound by the forum selection clause.

**1. Standard of Review**

When a motion to dismiss for "improper venue" is made pursuant to Rule 12(b)(3), the plaintiff has the burden of pleading venue.  Person v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  However, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in plaintiff's favor."  Id. (brackets removed) (quoting Caremark Therapeutic Servs. v. Leavitt, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005)).  To defeat the motion, plaintiffs need only make a prima facie showing of venue.  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005); New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).

**2. Governing Law**

Forum selection clauses have long enjoyed a presumption of enforceability.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) ("the forum clause should control absent a strong showing that it should be set aside"); Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721–22 (2d Cir. 1982) (highlighting deference shown to forum selection clauses post Bremen).  Courts use a four-part analysis to determine the enforceability of a forum selection clause in the face of a motion to dismiss:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  The second step requires us to classify the clause as

> mandatory or permissive, i.e., to decide whether the parties are _required_ to bring any dispute to the designated forum or simply _permitted_ to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007) (emphasis in original) (internal citations and quotation marks omitted). The parties agree that the four-prong Phillips framework applies.

### 3. Analysis of the Forum Selection Clause

#### a. The Forum Selection Clause was Reasonably Communicated

The forum selection clause was reasonably communicated to Mr. Halley. The provision appears in the West Hollywood Licensing Agreement, which Mr. Halley signed on behalf of Philippe West LLC after purchasing it in April of 2010. Defendants' contention that the forum selection clause was not reasonably communicated to Mr. Halley because he neither read it nor was informed of it when he signed the agreement, Defs.' Mem. 9-10, is meritless. It is basic contract law that a person who signs a contract is presumed to know its terms and consents to

be bound, and that failure to read a contract is no excuse.  See Pimpinello v. Swift & Co., 253 N.Y. 159, 162-63, 170 N.E. 530 (1930) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."). This principle applies equally to forum selection clauses.  See Weingrad v. Telepathy, Inc., No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005); Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 382 (S.D.N.Y. 2001) ("[A] signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed." (internal quotation marks omitted)).

Defendants' further excuses -- that Mr. Halley "is not a sophisticated businessman" and was not represented by counsel when signing the West Hollywood Licensing agreement, Defs.' Mem. 10 -- are also unavailing.  First, Mr. Halley's alleged unsophistication is belied by the extensive business experience he claims to have in the entertainment industry, including that he owns and controls multiple companies and manages "approximately 30 employees and . . . the day-to-day operations of all of [his] companies." First Manny Aff. ¶¶ 6-10.  Second, plaintiffs have made a prima facie showing (which defendants dispute) that Mr. Halley was represented in his negotiation of

18

the West Hollywood Licensing Agreement by a business management firm called Larkin Business Management, and an attorney named Alan Hall.   <u>See</u> Merchant Decl. ¶¶ 11–12 & Ex. D.   For these reasons, we conclude that the forum selection clause in the West Hollywood Licensing Agreement was reasonably communicated to Mr. Halley, and, therefore, the business entities he controls.

### b.   The Forum Selection Clause is Mandatory

The West Hollywood Licensing Agreement states that "any action . . . <u>shall</u> be brought in either the Supreme Court of the State of New York, County of New York or in the United States District Court for the Southern District of New York." (emphasis added).   The parties agree that this language is mandatory, not permissive.   Defs.' Mem. 10; Pls.' Mem. 21.

### c.   The Instant Claims and Parties are Subject to the Forum Selection Clause

Defendants correctly note that many of the parties to this case -- the defendants Mr. Halley, Mrs. Halley, and Imani Group, as well as both plaintiffs -- are not signatories to the West Hollywood Licensing Agreement between Dave 60 and Philippe West LLC.   Additionally, defendants claim that the license, by its terms, terminated upon the closing of Philippe West Hollywood. Therefore, defendants conclude, the forum selection clause applies to neither the instant claims related to Philippe Beverly Hills -- which opened after Philippe West Hollywood

closed -- nor any of the parties that did not sign the West Hollywood Licensing Agreement.  Defs.' Mem. 10-11.

However, defendants' position does not withstand a closer examination of the law and the facts alleged.  First, the forum selection clause remains in force pursuant to the West Hollywood Licensing Agreement's survival clause.  Second, the record submitted to us indicates that there was an agreement relating to Philippe Beverly Hills that reincorporated the terms and conditions of the previous license. Prior to opening Philippe Beverly Hills, Mr. and Mrs. Halley sought and received permission from Abraham Merchant, the President of MHI (the corporation that was then operating and managing Philippe NYC) to use Philippe NYC's intellectual property in the new restaurant.  Mr. Halley sought to transfer the license he obtained in the West Hollywood License Agreement to his new restaurant, but that proposal was rejected because Philippe West Hollywood had closed and the license had expired.  Therefore, Mr. Halley negotiated a new license to the same effect. Specifically, on October 30, 2013, MHI and Mr. Halley reached an oral agreement as to the economic terms of the license. Merchant asked Halley to "confirm that we are in agreement on the terms below" including that "[a]ll other terms and conditions remain the same."  Halley wrote back and confirmed.

By this agreement, Merchant and Halley reincorporated their previous licensing agreement: allowing Halley to once again use Philippe NYC's intellectual property, in a different restaurant location but under the same terms and conditions. These terms and conditions included the forum selection clause. Thus Imani Halley, negotiating on behalf of Imani Group, subjected himself to the same forum selection clause with respect to Philippe Beverly Hills. Other documents support this conclusion. For example, the proposed written licensing agreement for Philippe Beverly Hills (which was never executed) contained non-economic terms that appear nearly identical to the West Hollywood Licensing Agreement, including an identical forum selection clause. See Compl. ¶ 48; Merchant Decl. Ex. C. § 19.02.

Moreover, the fact that a person did not sign the contract containing a forum selection clause "is insufficient, standing alone, to preclude enforcement of [the] forum selection clause." Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009); see Weingrad, 2005 WL 2990645, at *5 ("[I]t is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.") (internal quotation marks omitted). "'In order to bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound.'" Weingrad, 2005 WL

2990645, at *5 (quoting Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003)).

Thus, forum selection clauses have been enforced against non-signatories in various contexts, including: non-signatory corporations that are successors in interest to signatories, Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp., 875 F. Supp. 2d 297, 306 (S.D.N.Y. 2012); non-signatory individuals who are officers or principals of a signatory corporation, id. at 307; non-signatories that "directly benefit[]" from the contract containing the provision, LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 155-56 (E.D.N.Y. 2012); and non-signatories with interests "directly related to, if not predicated upon" those of the signatories, Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998) (internal quotation marks omitted). See Recurrent Capital, 875 F. Supp. 2d at 306-08 & nn. 73-84 (collecting cases).

To the extent that certain parties in this action were not signatories to the West Hollywood Licensing Agreement or parties the Halley-Merchant agreement (formed between Imani Group and Philippe NYC) for the interim Beverly Hills license, they are "closely related" such that it is foreseeable they will be bound to the forum selection clause. Philippe NYC, for example, is

22

the successor in interest to Dave 60, the former sole owner and current co-owner of Philippe Restaurant. Similarly, plaintiffs credibly allege that Mr. Halley (in his individual capacity) and Mrs. Halley are the principals who own and control Imani Group.

We therefore conclude that plaintiffs have made the required prima facie showing that the instant parties and claims are subject to the forum selection clause. When the same principal strikes a second agreement with the same counterparty for the same intellectual property under the same terms and conditions -- albeit on behalf of a different business entity -- that principal and business entity are fairly and foreseeably subject to the same forum selection provision present in the prior agreement.

### d. Enforcement of the Forum Selection Clause is Neither Unreasonable nor Unjust

Having satisfied the first three prongs of the test in _Phillips_, the plaintiffs enjoy a presumption that their forum selection clause is enforceable. In this context, the forum provision applies unless:

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

Phillips, 494 F.3d at 392.   Defendants argue that Mr. and Mrs. Halley's financial and health conditions would make trial in New York so difficult and inconvenient that they would effectively be deprived of their day in court.   Defs.' Mem. 11-13.   To make this showing, a party must demonstrate that litigation in the selected forum will be not merely difficult or costly, but nearly impossible.   Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *9 (S.D.N.Y. Sept. 24, 2010).

The time and cost of travel to New York -- including missed time at work -- is surely significant, particularly for parties "stretched to their financial limits." Defs. Mem. 11.   However, such hardships, without more, have been found insufficient to escape the presumption of enforceability.   See Phillips, 494 F.3d at 393 (enforcing forum selection clause requiring U.S. citizen to litigate in England, in part because plaintiff "has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad. . . or were not foreseeable when he agreed to litigate in England."); Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995) ("Although appellee would prefer the relative comfort of a court in New York or Florida, she agreed to have her claim adjudicated in Greece.   This agreement should not be negated unilaterally by plaintiff's conclusory assertions that she cannot afford to

travel to Greece, that she would be afraid to stay at a strange city, that she does not know any Greek lawyers, etc. Unsupported statements such as these do not meet the heavy burden of proof required to set aside a forum-selection clause on the ground of inconvenience." (internal quotation marks omitted)); Zuckerman ex rel. Zuckerman v. Camp Laurel, No. 08 Civ. 3913 (NRB), 2008 WL 4386837, at *2 (S.D.N.Y. Sept. 24, 2008) ("Although a trial in Maine would be more difficult for plaintiffs [who reside in New York City], it certainly would not effectively deprive them of their day in court."). We also empathize with Mrs. Halley's medical condition, which defendants say requires constant supervision from her husband.[9] It appears, however, that these difficulties exist regardless of whether the case is litigated in California or New York, and defendants advance no argument as to why -- other than the time and cost of travel to New York for trial -- a New York forum would effectively deprive the Halleys and their business entities their day in court. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991).

---

[9]     "Mrs. Halley suffers from epilepsy . . . .   It is likely that Mrs. Halley will experience a seizure because lawsuits are stressful and she will be forced to travel across the country while medically unstable. . . . Mrs. Halley cannot be left alone or travel by herself because of her medical condition. . . . Mr. Halley is the only person who can assist her because he is always with her and knows how to properly care for her in the event of a seizure."  Defs.' Mem. 13.

Significantly, plaintiffs have expressed a willingness to accommodate the Halleys, including by exchanging discovery electronically, interfacing primarily with defendants' New York counsel, and conducting depositions in California. Pls.' Mem. 24. The Court will hold plaintiffs to these commitments going forward and is open to considering any other suggestion for mitigating the burden of litigation in New York. Ultimately, however, defendants are not entitled to avoid litigating in New York on the basis of the grounds asserted.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that there is no basis for defendants' motion to dismiss on service of process, personal jurisdiction, and venue grounds. Therefore defendants' motion to dismiss, ECF No. 20, is denied.

**SO ORDERED.**

Dated:    New York, New York
          March **23** , 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

26